*<u>E-FILED - 3/31/09</u>*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID LITMON, JR., | No. C 03-2054 RMW (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SANTA CLARA COUNTY, et al., | |
| Defendants. / | (Docket No. 70) |

**INTRODUCTION**

Plaintiff, who, at the time of filing, had been found to be a sexually-violent predator ("SVP"), filed this <u>pro</u> <u>se</u> civil rights complaint pursuant to 42 U.S.C. § 1983.[1]  In his complaint, plaintiff alleges that staff at Santa Clara County Jail ("SCCJ") violated his constitutional rights during his civil detention by failing to provide constitutionally adequate conditions of confinement, treatment for his mental and physical conditions, and disability access.  Defendants now move for summary judgment, alleging that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  Defs.' Mot. for

---

[1] Some time after the filing of the complaint, plaintiff was released from, and currently is free of, civil detention.

Summ. J. ("MSJ") at 1.

After a review of the record, the court concludes that plaintiff has not shown evidence that precludes summary judgment. Accordingly, the court GRANTS defendants' motion for summary judgment as to all claims. The complaint is hereby DISMISSED.

## BACKGROUND

Plaintiff's claims arise from his six stays at SCCJ from 2002 to 2007.[2] Plaintiff's first stay was from April 30, 2002 to December 11, 2003. During this first SCCJ stay, plaintiff was housed at times in Unit 5A in administrative segregation, "protective custody overflow," and at other times in E-Dorm, the usual housing for SVPs. The second stay was from December 16, 2003 to June 22, 2004, during which time he was housed in E-Dorm, with the exception of one month in 2004 when he was housed in medical unit special housing so that he could have a special mattress and shoes. The third through sixth stays, during which he was housed in "E-Dorm," were March 15, 2005 to April 18, 2006, September 8, 2006 to October 25, 2006, December 27, 2006 to January 24, 2007, and March 14, 2007 to May 1, 2007. During the periods that plaintiff was not at SCCJ, he was at Atascadero.[3] MSJ at 5–7.

## DISCUSSION

**I.   Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

---

[2] In April 2002, plaintiff was transferred from Atascadero State Hospital, where he had been confined as an SVP, to SCCJ, while he stood trial to determine whether his commitment as a SVP would be renewed.

[3] The facts recited appear to be undisputed.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its' own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

**II.    Plaintiff's Claims**

Plaintiff claims can be divided into three types: (A) unconstitutional conditions of cell confinement; (B) deliberate indifference to his medical and psychological needs; and (C) lack of disability access.

**A.    Conditions of Cell Confinement**

Plaintiff claims that he: (1) had to remain in his cell for at least twenty-three hours a day and therefore was denied constitutionally adequate exercise time; (2) was required to shower in front of criminal detainees, in violation of his constitutional right to privacy; and (3) had to submit to unconstitutional searches.

Individuals who have been involuntarily committed may not be subjected to conditions of confinement that amount to punishment, "within the bounds of professional discretion," Hydrick v. Hunter, 500 F.3d 978, 997 (9th Cir. 2007); rather, the conditions and duration of confinement must "bear some reasonable relation to the purpose for which [such] persons are committed." See id. (internal quotation and citation omitted).  Further, individuals who are awaiting civil commitment proceedings are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime, such as pre-trial detainees.  Jones v. Blanas, 393 F.3d 918, 931–32 (9th Cir. 2004).

Punitive conditions may be shown where challenged restrictions are expressly intended to punish, where they are excessive in relation to a non-punitive purpose, or where they are employed to achieve objectives that could be accomplished by alternative and less harsh methods.  Id., 393 F.3d at 932.  Additionally, a presumption of punitive conditions of confinement applies when an individual awaiting adjudication as an SVP is confined "in conditions identical to, similar to, or more restrictive than those in which his criminal counterparts are held," id., or "in conditions more restrictive than those the individual would face following SVP[] commitment," id. at 933.

Because SVPs are detained for the purpose of treatment, and the state's power to punish them expires at the end of their criminal sentence, the Eighth Amendment is not the proper vehicle for them to challenge the conditions of their civil confinement.  Hydrick, 500 F.3d at 994.  However, the same claims for inhumane treatment and failure to protect may be raised under the Fourteenth Amendment.  Id.  The standard applicable to SVPs under the Fourteenth Amendment is at least coextensive with that applicable to prisoners under the Eighth Amendment.  Id.

### (1) Confinement to Cell and Adequate Exercise Time in Unit 5A

Plaintiff claims that while he was housed in administrative segregation in Unit 5A, he was confined to his cell for at least twenty-three hours a day, a confinement condition that

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.03\Litmon054.msj.grant.md                4

violated his constitutional rights. Pl.'s Opp. to MSJ ("Pl.'s Opp.") at 11. During the hour of free time he was allowed daily, Plaintiff "was required to shower, use the phone, exercise[,] get hot water, and do any other activities within an hour." Id. Defendants largely do not dispute these facts, but rather assert that such confinement was justified by legitimate, non-punitive reasons:

> Partway through [plaintiff's] first stay at issue in this action, E-Dorm became the housing unit for SVPs, including [plaintiff]. Prior to that time, SVPs were housed in E-dorm when possible, but [plaintiff] was sometimes housed in administrative segregation in Unit 5A when appropriate considerations of facility operations and security required the use of E-dorm for other populations. For example, when [plaintiff] arrived from Atascadero on April 30, 2002, he was housed in Unit 5A because a population of juveniles was housed in E-Dorm.
> . . . .
> The time [plaintiff] spent in his cell while housed in 5A was not punitive; rather, it resulted from the necessity of rotating scheduled time out while ensuring that [plaintiff] and other SVPs were kept in proper administrative segregation and were not out of their cells at times when they would be in danger of encountering other persons who were also housed in protective custody in Unit 5A.

MSJ at 32. Plaintiff does not dispute defendants' given reason for the amount of time inmates were kept to their cells.

Exercise is one of the basic human necessities protected by the Eighth Amendment. See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993). Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well-being" of prisoners. See Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Prison officials therefore may not deprive prisoners of regular exercise. See Toussaint v. McCarthy, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984). More specifically, the Fourteenth Amendment requires that pretrial detainees not be denied adequate opportunities for exercise without a legitimate governmental objective. Pierce v. County of Orange, 526 F.3d 1190, 1211–12 (9th. Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 538 (1979)). Although the Ninth Circuit did not specify the "minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells," the court held in a recent

1  decision that ninety minutes per week of exercise, which is the equivalent of slightly less
2  than thirteen minutes a day, does not comport with Eighth Amendment standards. Pierce v.
3  County of Orange, 526 F.3d 1190, 1212 (9th. Cir. 2008). The Pierce court eventually
4  required that if detainees spent twenty-two hours per day in their cells, that they then be
5  provided with at least two hours of exercise per week. Id. at 1213. Other courts, as noted in
6  Pierce, have held that detainees who are held for more than a short time and spend the bulk
7  of their time inside their cells are ordinarily entitled to daily exercise, or five to seven hours
8  of exercise per week, outside their cells. See Campbell v. Cauthron, 623 F.2d 503, 507 (8th
9  Cir.1980) (holding that pre-trial detainees are generally entitled to one hour of exercise
10 outside their cells daily if they spend more than sixteen hours in their cells); see also Housley
11 v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994) (overruled on other grounds by Tucker v.
12 Graves, 107 F.3d 881 (10th Cir. 1997) ("'a failure to provide inmates (confined for more than
13 a very short period with the opportunity for at least five hours a week of exercise outside the
14 cell raises serious constitutional questions'") (quoting Davenport v. DeRobertis, 844 F.2d
15 1310, 1315 (7th Cir.1988)). One district court, also noted in Pierce, in a class action brought
16 pursuant to § 1983 challenging pre-trial conditions of confinement, has held that
17 "defendants' failure to provide each inmate one hour per day of exercise outside the cells is a
18 constitutionally intolerable condition." Hutchings v. Corum, 501 F.Supp. 1276, 1294
19 (D.Neb.1980).

20         Reading the record in the light most favorable to plaintiff, the court finds that plaintiff
21 has not shown evidence that precludes summary judgment. According to plaintiff's
22 assertions, while in 5A he received roughly one hour per day outside of his cell — totalling
23 some seven hours a week — during which time he was allowed to exercise, shower, or attend
24 to other tasks or needs. Plaintiff, therefore, received regular, more or less daily, time for
25 exercise, twice the amount of time found inadequate in Pierce, and approximately equal or in
26 excess of the amounts discussed in Campbell v. Cauthron and Housley. Furthermore,
27 defendants have presented evidence that the amount of time afforded to plaintiff was limited
28

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.03\Litmon054.msj.grant.md        6

1 for legitimate, non-punitive reasons. Specifically, in order to both provide exercise time to
2 detainees such as petitioner, and to ensure their safety and segregation from other types of
3 detainees, exercise time was limited to the time described above. On these undisputed facts,
4 the court finds that plaintiff has not presented evidence that precludes summary judgment.
5 Accordingly, defendants are entitled to judgment as a matter of law. Therefore, the court
6 GRANTS defendants' motion for summary judgment as to this claim.

### (2) Showering in Unit 5A

Plaintiff claims that he was required to shower in front of, and therefore expose his nude body to, criminal inmates. Pl.'s Opp. at 18–19. Plaintiff asserts that "it is true that the shower has some kind of blurred glass, but other persons are able to view one's body, although less distinctly." Id. at 19. Plaintiff further asserts that the size of the shower made "it impossible to put on clean dry clothes inside of the shower[,] thus forcing one to dress outside the shower in plain view of persons under criminal process." Id. Defendants have presented evidence that the residents of plaintiff's housing area can choose what to wear to get to the shower and what to wear after the shower — such choices are "dictated by the individual's sense of modesty." "Generally, the residents of 5A went to the shower with their underwear on and their towel, which they would then hang on the shower, and which they would put back on before leaving the shower."[4] MSJ at 29.

"It is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . [is] the naked body.'" Hydrick, 500 F.3d at 1000 (quoting Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.1985)). "While the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous

---

[4] Plaintiff contends that he was being treated less well than criminal detainees at SCCJ, who, according to Plaintiff, have a larger shower, whose size allows them to dress themselves before exiting the shower. Second Am. Compl. at 2; Pl.'s Opp. at 19. It appears from the facts given by defendants, and undisputed by plaintiff, that detainees in 5A were able to put on a minimal amount of clothing to cover their bodies for most of the time. Based on this record, plaintiff was able to achieve some level of privacy when showering, and the exposure was not gratuitous. Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.

1 invasions of privacy violate the Fourteenth Amendment." See id.

2 Reading the record in the light most favorable to plaintiff, the court finds that plaintiff
3 has not presented evidence that precludes summary judgment as to this claim. Plaintiff's
4 nude body, if he did not wear underwear, could have been observed only when he entered
5 and exited the shower. Defendants have presented evidence that plaintiff, like other inmates
6 in his housing area, could choose how he wished to dress on the way to and from the shower,
7 and, as plaintiff concedes, the shower door provided some measure of privacy. This
8 undisputed evidence, along with the fact that he was exposed for a short time, indicate that
9 the alleged privacy intrusions were not gratuitous. Accordingly, defendants' motion for
10 summary judgment is GRANTED as to this claim.

**(3) Exercise in E-Dorm**

12 Plaintiff claims that while he was housed in E-Dorm, defendants gave him insufficient
13 exercise time. Second Am. Compl. at 5. "In June 2003, Plaintiff was again transferred to E-
14 Dorm where[] he continued to be subjected to 3 hours of out o[f] doors time per week." Id.
15 Defendants largely do not dispute these facts, but rather assert that such confinement was
16 justified by legitimate, non-punitive reasons. Specifically, defendants assert that the inmate
17 exercise program is run according to "the need to rotate outdoor exercise time to ensure that
18 all inmates receive adequate outdoor exercise time while still maintaining the SVPs in
19 administrative segregation." Id.

20 Reading the record in the light most favorable to plaintiff, the court finds that plaintiff
21 has not presented evidence that precludes summary judgment. First, plaintiff admits that he
22 received three hours per week, which is twice the amount found constitutionally inadequate
23 in Pierce. Second, assuming, arguendo, that plaintiff has shown that three hours of exercise
24 time per week is punitive, defendants have rebutted the presumption that these circumstances
25 are punitive by offering the legitimate, non-punitive reason of maintaining jail security and
26 effective management of their facility as the basis for their policy. Based on this record, the
27 court finds that plaintiff has not presented evidence that precludes summary judgment.

28

1  Accordingly, defendants' motion for summary judgment is GRANTED as to this claim,
2  which is hereby DISMISSED.

### (4) Searches

Plaintiff contends that defendants subjected him to unreasonable body and property searches during his stay at SCCJ. Second Am. Compl. at 4. Defendants do not dispute plaintiff's factual assertions. However, defendants assert that plaintiff was thrice found with contraband during his stays at SCCJ. MSJ at 6, 7.

The Fourth Amendment right to be secure against unreasonable searches and seizures extends to SVPs. Hydrick, 500 F.3d at 993. The reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry. Id. A strip search that includes a visual body cavity search complies with the requirements of the Fourth Amendment so long as it is reasonable. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Bell, the Supreme Court evaluated the constitutionally of a blanket policy allowing visual body cavity searches, without regard to individualized suspicion, of all inmates at the county jail, including pretrial detainees, after every contact visit with a person from outside the institution. Id. at 559–60. The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons, and other contraband into the institution presented significant and legitimate security interests. Id. In finding that the searches allowed by the policy were reasonable under the Fourth Amendment, the Supreme Court employed the following balancing test:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559.

Defendants have presented evidence that SCCJ has a policy of conducting "pre-housing" searches on inmates arriving from state facilities — such as plaintiff, who arrived

from Atascadero — "to prevent the smuggling of weapons and contraband in the jail." The searches at SCCJ are solely visual ones conducted by a person of the same gender as the inmate. During the search, the inmate removes his clothing and then his bodily is visually inspected while he stands in a private area. SCCJ also conducts strip and visual body cavity searches on inmates who have been transported outside of SCCJ's security perimeter, on inmates, such as plaintiff, who leave their unit, and when an officer has a reasonable suspicion that an inmate may have contraband. Again, these searches are conducted to prevent the smuggling of weapons or contraband. SCCJ also conducts searches of cells and property in order to "detect contraband, prevent escape, and ensure a minimal standard of cleanliness and order. MSJ at 25. Defendants having presented undisputed evidence that plaintiff was thrice found with contraband adds support to their justification for SCCJ's policy and its particular application to plaintiff.

The Court finds that plaintiff has failed to create a genuine issue of material fact as to whether he suffered a violation of a constitutional right when he was searched. The recent decision of the district court in Johannes v. Alameda County Sheriff's Dept., No. C 04–0458 MHP, 2006 WL 2504400 (N.D.Cal. Aug. 29, 2006), is particularly relevant to the court's analysis. In Johannes, the plaintiff, an individual awaiting civil commitment proceedings as an SVP, had been pat-searched before leaving Atascadero State Hospital, he was again pat-searched when he arrived at the county jail and was subjected to a strip search and visual body cavity inspection the next day. Id. at *1. Johannes also was subjected to a strip search and visual body cavity search each time he returned from court, resulting in a total of eight such searches while he was at the county jail. Id. The searches were conducted pursuant to a policy requiring all inmates who had been outside of the facility to be strip searched and visually inspected upon their return. Id. at *4.

The district court concluded the policy was reasonable, finding as follows:

> The most important factor in the analysis is that Johannes had been outside the physical confines of the county jail just before each time he was searched. His contacts with the outside world provided him with opportunities to obtain contraband before he entered the jail from Atascadero and before he returned

> from court. The existence of these opportunities to obtain contraband provided a legitimate basis for application of defendants' strip search policy to Johannes.

Id. at *12.

As part of its analysis, the district court gave special consideration to Johannes's status as an SVP; specifically, the district court noted that (1) the planned nature of Johannes's transfer from Atascadero State Hospital to the County Jail gave him the time to plan and organize smuggling of contraband into the county jail, if he was so inclined; (2) Johannes's time in custody at the county jail was not expected to be brief; and (3) Johannes had a lengthy and continuous history of incarceration that had led him to be classified as criminally sophisticated upon his arrival at the county jail. Id.

Similarly here, the evidence is undisputed that plaintiff was transferred to SCCJ from Atascadero State Hospital; some individuals arriving from state detention facilities such as Atascadero State Hospital attempt to smuggle contraband and weapons into SCCJ; and defendants employed a search policy designed to protect both the legitimate security interests threatened by such smuggling and the privacy interests of the individual being searched. Further, and similar to the record before the court in Johannes, the evidence is undisputed that plaintiff had a lengthy and continuous history of incarceration (he had been convicted of rape charges and served time in prison, and had been committed as an SVP and incarcerated at Atascadero State Hospital prior to his transfer to SSCJ). Also, the undisputed evidence shows that the searches were conducted while trying to maintain plaintiff's dignity and privacy. Based on this evidence, the Court concludes plaintiff has not created a genuine issue of material fact as to his claim that his constitutional rights were violated because he was subjected to an unreasonable search under the Fourth Amendment. Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.

**(B)    Alleged Indifference to Medical and Psychological Needs**

Plaintiff claims that SCCJ violated his constitutional rights to adequate medical and psychological treatment by depriving him of various palliative measures. More specifically,

Plaintiff alleges that he asked for and was denied (A) his personal clothing; (B) a modified diet (as treatment for his high-cholesterol condition); (C) more exercise time (also as treatment for his high-cholesterol condition); (D) surgical correction (as treatment for his bone spurs); (E) special shoes (also as a treatment for his bone spurs); (F) special mattresses and physical therapy (to treat his back and shoulder pain); (H) constitutionally adequate treatment for his enlarged prostate, his heart, and his stomach and bowel problems; and (G) constitutionally adequate mental health treatment and disability access for same. Second Am. Compl. at 5–7.

As stated above, the standard applicable to SVPs under the Fourteenth Amendment is at least coextensive with that applicable to prisoners under the Eighth Amendment. The Eighth Amendment imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199–200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective first component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it may be withheld. See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

What is required to establish the second element of an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. Whitley v. Albers, 475 U.S. 312, 320 (1986). In cases concerning conditions of

1  confinement, such as this one, the necessary state of mind is one of "deliberate indifference."
2  See, e.g., Farmer, 511 U.S. at 834 (inmate safety); Helling, 509 U.S. at 32–33 (inmate
3  health); Wilson, 501 U.S. at 302-03 (general conditions of confinement); Estelle v. Gamble,
4  429 U.S. 97, 104 (1976) (inmate health).  Neither negligence nor gross negligence will
5  constitute deliberate indifference.  See Farmer, 511 U.S. at 835–36 & n.4.  Rather, it must be
6  shown that the standard for criminal recklessness is met, i.e., the official knows of and
7  disregards an excessive risk to inmate health or safety.  See id, 511 U.S. at 837.

### A. Personal Clothing

Plaintiff fails to allege why he required personal clothing.  Plaintiff also has failed to detail at all how defendants' alleged denial of his personal clothing resulted in a sufficiently serious deprivation under Farmer.  Furthermore, plaintiff has not presented any evidence to support his claim.

Defendants have presented evidence that plaintiff had "mild stable anemia with a nearly normal hemocrit (blood count) that never fell near to the level at which a person would begin to experience a feeling of coldness from anemia and therefore [plaintiff] never required a thermal shirt for anemia."  MSJ at 7.

Reading the record in a light most favorable to plaintiff, the court finds that plaintiff has not shown that there is a triable issue of fact regarding his claims that he was unconstitutionally deprived of medically-necessary clothing.  Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.

### B. Modified/Special Diet

Plaintiff alleges that SCCJ denied him his special diet to treat his high cholesterol condition. Second Am. Compl. at 7, 10–12. Defendants have presented evidence that plaintiff was placed on a low-fat diet, consistent with American Dietary Association guidelines.  Defendants have also provided evidence that plaintiff requested to discontinue the special diet in October 2003 during the month of Ramadan, and again requested to discontinue the diet in July 2005 because he was tired of eating chicken.  Finally, defendants

1  have also presented evidence that plaintiff was prescribed, at different times, four different
2  cholesterol-treatment medications, three of which plaintiff eventually refused to take because
3  they allegedly caused unpleasant side effects.  Defendants have presented evidence that
4  plaintiff finally was prescribed Lovastatin at Atascadero and continued to take it while at
5  SCCJ.  MSJ at 8–9.

6  "A difference of opinion between a prisoner-patient and prison medical authorities
7  regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d
8  1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of
9  medical opinion as to the need to pursue one course of treatment over another is insufficient,
10 as a matter of law, to establish deliberate indifference.  See Toguchi v. Chung, 391 F.3d
11 1051, 1059–60 (9th Cir. 2004).

12 Reading the record in the light most favorable to plaintiff, the court finds that he has
13 not established a constitutional violation under Farmer.  First, plaintiff has not established the
14 objective Farmer element that the alleged deprivation was sufficiently serious, and
15 consequently has not shown any Eighth Amendment violation.  Assuming, arguendo, that
16 prison staff discontinued his low-fat diet, SCCJ continued to treat plaintiff's high-cholesterol
17 condition with medication.  Though it may not have been the treatment plaintiff desired,
18 there is evidence that SCCJ did try to treat his condition.  Furthermore, plaintiff does not
19 allege, nor has he presented evidence, that his condition worsened, or that he suffered any ill-
20 effects, after the special diet allegedly was discontinued. From this, the court finds that
21 plaintiff has not shown that the alleged deprivation was sufficiently serious.

22 Also, plaintiff has not shown that defendants' acted with deliberate indifference to his
23 medical needs.  Specifically, plaintitff has not presented evidence that SCCJ knew of a risk to
24 his health and disregarded it.  On the other hand, defendants have presented evidence that
25 they knew of plaintiff's condition and sought to treat it.  Based on this record, the court finds
26 that plaintiff has not shown evidence that precludes summary judgment.  Accordingly,
27 defendants' motion for summary judgment is GRANTED as to this claim.

28

### C.  Increased Exercise Time

Plaintiff alleges that SCCJ failed to increase the allowed amount of exercise time as treatment for his high-cholesterol condition. Second Am. Compl. at 7. In this claim, plaintiff fails to allege how much more time he should have been allowed and how this would treat his condition. Furthermore, plaintiff has not demonstrated that he suffered any ill-effects from the alleged deprivation. Also, as stated above, a disagreement over appropriate medical care, such as whether plaintiff should have more exercise time, is not a basis for a § 1983 claim. Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.

### D.  Surgical Correction and Special Shoes

Plaintiff alleges that SCCJ should have and failed to surgically correct his bone spurs. Second Am. Compl. at 7, 10–12. The following facts appear to be undisputed. While at Atascadero in August 2001, plaintiff was diagnosed with flat feet and bone spurs. Atascadero's continuing care plan for plaintiff states "provide adequate shoes — sandals." At SCCJ's main jail, sandals are standard footwear for inmates. In May 2002, SCCJ noted bone spurs on plaintiff's feet.[5] Plaintiff at first received medical authorization for soft-soled shoes, but was later denied permission, based on security reasons, to have them outside the medical unit. Defendants were willing to give plaintiff cortisone injections to reduce the discomfort and pain bone spurs may cause, but plaintiff refused them. MSJ at 9.

Reading the record in the light most favorable to plaintiff, the court finds that plaintiff has failed to show that there is a triable issue of fact on this claim. The undisputed facts show that plaintiff was offered various forms of treatment other than surgery, which he either refused, or used for a time and then abandoned. Though plaintiff alleges that SCCJ should have surgically treated his bone spurs, a disagreement of medical opinion is in itself not a basis for a § 1983 claim. He may not have received the medical care he would have liked,

---

[5] According to defendants, X-rays indicated that plaintiff's bone spurs "did not require surgical correction," a fact plaintiff obviously disputes. MSJ at 9.

1 but SCCJ did offer some appropriate medical care. Accordingly, defendants' motion for
2 summary judgment is GRANTED as to this claim.

### E. Special Mattresses and Physical Therapy

Plaintiff alleges that SCCJ, in violation of his constitutional rights, failed to provide him with a special mattress and physical therapy to treat his shoulder pain and discomfort. Second Am. Compl. at 7. Unless otherwise noted, the following facts appear to be undisputed. Plaintiff injured his right shoulder in 1968. In 2001, while at Atascadero, he underwent shoulder surgery, after which he had roughly six months of physical therapy. In 2002, SCCJ prescribed Vioxx and later Celebrex to treat plaintiff's right-shoulder discomfort. According to defendants, the orthopedist, though he thought it unnecessary, did show plaintiff how to do some theraputic exercises. Also in 2002, plaintiff was diagnosed with lordosis, "an anatomical variation" of the spine's curve that may cause back pain. Plaintiff requested, and was granted permission to have, a double-mattress. In December 2003 and January 2004, plaintiff requested, and was granted permission to have, an egg-crate mattress, an item permitted in only special housing in the medical unit. Plaintiff was transferred to special medical housing, but plaintiff asked to be rehoused in the E-dorm "even though it meant that he would not be able to have soft-soled shoes and an egg-crate mattress." MSJ at 11. Also in January 2004, plaintiff was offered, but refused to a steroid injection to treat inflammation. MSJ at 10.

Reading the record in the light most favorable to plaintiff, the court finds that he has not established a constitutional violation under Farmer. First, plaintiff has not established the objective Farmer element that the alleged deprivation was sufficiently serious. It is undisputed that SCCJ did not deprive plaintiff of these palliative measures, but rather that he voluntarily deprived himself by requesting a transfer. Furthermore, plaintiff does not allege, nor has he presented evidence, that his condition worsened, or that he suffered any ill-effects, after not having access to the mattresses or to physical therapy. From this, the court finds that plaintiff has not shown that the alleged deprivation was sufficiently serious.

Also, plaintiff has not shown, under <u>Farmer</u>, that defendants' acted with deliberate indifference. Specifically, plaintitff has not presented evidence that SCCJ knew of a risk to his health and disregarded it. Rather, it appears that SCCJ was aware of plaintiff's condition and that it sought to treat it. Based on this record, the court finds that plaintiff has not shown evidence that precludes summary judgment. Accordingly, defendants' motion for summary judgment is GRANTED as to this claim.

### F.   Treatment for Enlarged Prostate, Heart, and Gastro-Intestinal Ailments

Plaintiff claims that SCCJ failed to give him constitutionally adequate medical care for his enlarged prostate. Second Am. Compl. at 8, 10–12. The following facts appear to be undisputed. Plaintiff was diagnosed with an enlarged, but benign, prostate, a condition common to men of his age. Medical staff first prescribed Cardura to shrink the prostate, until plaintiff began experiencing dizziness, at which time medical staff prescribed Flomax and Distropan. Plaintiff's urinary frequency, which increased as his prostate enlarged, decreased when he took Cardura. MSJ at 7–8.

Reading the record in the light most favorable to plaintiff, the court finds that plaintiff has not presented evidence that precludes summary judgment. Though plaintiff may feel that the prescribed treatment was insufficient, the evidence shows that plaintiff received some appropriate treatment. Again, a difference of medical opinion as to treatment is insufficient on its own to show a constitutional violation. Plaintiff has not shown any evidence that there was a deprivation at all, much less that the deprivation was sufficiently serious under <u>Farmer</u>.

Similarly, plaintiff has not shown that defendants failed to provide constitutionally adequate medical care for his heart condition and his gastro-intestinal complaints. Defendants assert, and plaintiff does not dispute, that defendants examined his heart performance after plaintiff had complained of irregular heartbeats. Defendants aver that they determined that plaintiff had a "minor heart defect (right bundle branch block) but no significant heart disease," for which no treatment was necessary or given. MSJ at 11.

Defendants also assert that they gave plaintiff medications (Zantac, Protonix,

1  Simethicone, Motrin, Prilosec, Bentyl, Metamucil, and a stool softener) to treat his acid
2  reflux, dyspepsia, irritable bowel syndrome, and his "related symptoms of shaking, dizziness,
3  and digestive difficulty." Defendants aver that they also performed a colonoscopy, an ulcer
4  test, a general physical exam, a bacteria test, as well as taking x-rays. Id. at 11–12.

5  Reading the record in the light most favorable to plaintiff, the court finds that plaintiff
6  has not presented evidence that precludes summary judgment. Though plaintiff may feel that
7  the prescribed treatment was insufficient, the evidence shows that plaintiff received some
8  appropriate treatment. Again, a difference of medical opinion as to treatment is insufficient
9  on its own to show a constitutional violation. Plaintiff has not shown any evidence that there
10 was a deprivation at all, much less that the deprivation was sufficiently serious under Farmer.
11 Accordingly, defendants' motion for summary judgment is GRANTED as to these claims.

**(G)   Mental Health Treatment and Disability Access**

13 Plaintiff claims that defendants failed to offer constitutionally sufficient treatment for
14 his mental health, and that defendants failed to make the available programs available to a
15 person with a disability, such a plaintiff. Second. Am. Compl. at 7. Defendants assert, and
16 plaintiff does not dispute, that SCCJ offered several appropriate mental health treatment
17 programs — including ones addressing issues related to substance abuse and sexual offenders
18 — as well as counselling and medication, to plaintiff, who admits that did not participate in
19 any of the programs. MSJ 13–14. By disability, plaintiff appears to mean his SVP mental
20 health conditions. Plaintiff does not state specifically how that condition prevented him from
21 participating in the offered programs, or how certain accessibility measures would have aided
22 him. On this record, the court finds that plaintiff has not presented evidence that precludes
23 summary judgment. Accordingly, defendants' motion for summary judgment is GRANTED
24 as to this claim.

**CONCLUSION**

26 The court concludes that defendants are entitled to judgment as a matter of law as to
27 all claims. Accordingly, defendants' motion for summary judgment (Docket No. 70) is

GRANTED as to all claims.  The complaint is hereby DISMISSED.  Because the court finds in favor of respondent on all claims, plaintiff's requests for injunctive relief are DENIED AS MOOT.

The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

DATED:   3/27/09

RONALD M. WHYTE
United States District Judge